Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court, Carolyn Wiggin from the Federal Defender's Office for Mr. Tobey. And I am going to try to reserve two minutes for rebuttal. We'll try to help. Thank you. Your Honors, I'd like to start by addressing the question that the panel specially raised. And our position is that this Court can't decide whether the magistrate judge abused his discretion in refusing to allow Mr. Tobey to retain counsel and be considered for appointment of counsel by the CJA. As I mentioned in the 28J letter, the record on this is fully developed. Wouldn't change at all at the district court level. This court will look at the same record as the district court and apply the same standards of review. And even if this matter was sent back to the district court for a decision, if it came up on appeal again, this court would be looking at the identical record of what happened in magistrate judge sort, not giving deference to the district court. So I encourage this panel to reach that issue, provided it agrees with the argument that there was a ripe Sixth Amendment interest Mr. Tobey had in this case. So the authority that you cited in the 28J letter was a case from out of circuit, and then an unpublished memorandum of disposition from this court, pretty recent sometime in 2021, in the last couple of months. I assume because you didn't cite it that you didn't find anything else. I'm not saying that that's not sufficient. I just was there anything else that you found when you searched the issue? If I didn't find anything, if there's a many cases where district courts in the circuit agree that we use the same standards of review in doing appeals for magistrate judge, criminal judgments, but I, I didn't see anything that quite had the same very specific language about looking at the same magistrate record. I think it's just, it happens all the time, but I didn't find any great language on that. But I believe it's very clear. That's what the Ninth Circuit does as well in magistrate judge appeals. As I look at this case, it's, I mean, it's a, from the standpoint of Mr. Tobey, of course, it's a, it's a big case. It, however, is a fairly small case as we see most of these things come through. The case had been pending in front of the magistrate judge for some months. The trial is scheduled for two days off. And Mr. Tobey comes in, represented by somebody in the side with the quality of the representation. He basically says, I want a continuance. And the magistrate judge says, no. You can go forward with the lawyers you've got, or you can represent yourself, but I'm not gonna continue. Why is that an abuse of discretion? Well, your honor, it's really not clear what Mr. Ludwig's relationship to Mr. Stroud was. Mr. Stroud is the retained counsel, and he had, he had written the motion to disconnect. That date, May 7th, was also the pretrial conference in the case, and he simply doesn't show up. And I don't know what Ms. Ludwig's relationship is to Mr. Stroud exactly, but she's not his lawyer. And Mr. Tobey says he's been missing meetings, he's busy with his new contract as the Glynn County Public Defender. Mr. Tobey, we don't know when he told Mr. Stroud, I want new counsel. Mr. Stroud clearly wasn't engaging in the case and didn't file anything, but Mr. Tobey, at the first time he was in court, told this right off the bat to the judge. And everyone in the courtroom agreed, Mr. Stroud was not prepared. Mr. Tobey was not engaged in the relationship. I mean, the prosecutor even said, I get it. He's got some tough problems. The magistrate judge agreed, yeah. I hear you, that he hasn't subpoenaed witnesses, but that's your problem. And the magistrate judge, instead of weighing the interest, just entirely went with the fact that it would be inconvenient to the government to move the trial. And I... Well, I think it could weigh that. I think that it completely gave no weight or credit to Mr. Tobey's interest in being able to discharge counsel. So, I mean, the magistrate judge didn't just say it's inconvenient for the government. And the magistrate judge phrased the decision in terms of prejudice. The government already had a witness en route, traveling cross country, and I think two other witnesses that may be in the air at that point. And the government had prepared for a trial, and the court referenced the court's own calendar. So, it's a situation where a judge might look at it and say, if it were my decision, I might have done it differently. But that doesn't necessarily mean abusive discretion. And I know both parties cited the case law that runs through the factors that the court should consider. What do you think is your best case, or your most analogous case, that would lead us to conclude that this was an abuse of discretion? Well, I think it would be Brown and Rivera Corona together. Brown cites to Rivera Corona, but it says, when this happens, someone has to obtain counsel and says, I want... This isn't working. I want counsel appointed. There is a three step test. The judge has them give information about whether they qualify for appointment of counsel, makes a decision about whether they qualify, and then... Wait, wait, wait, wait. Before we get there, I mean, Mr. Turby had counsel at this point. So, before you go from his Sixth Amendment rights with retained counsel, and the right to counsel of his choosing, his firing counsel, to statutory right for indigent defendants to have a court appointed counsel, he has to be without counsel. So, it seems the magistrate judge did not get there because he did not allow Mr. Turby to fire counsel on the eve of trial. If he had, he'd taken a financial affidavit, and then would have continued that analysis. But before even deciding, does he qualify for counsel? I think the court had to decide whether Mr. Turby could fire his retained counsel under those circumstances. So, what's the test for that? What do you think is the test for that? Well, I just wanna say, interestingly, Rivera, Corona, and Brown lay out the steps in the order I described, and I think... But are they... You're gonna have to refresh my recollection, because this is a lot of cases in one week, so I apologize. But there's multiple circumstances. There's firing retained counsel to hire a different retained counsel. There's asking to have appointed counsel relieved in different appointed counsel. And then there's what we have here, which is in the middle, of firing retained counsel and asking for appointed counsel. And so, we're starting to tease out the circumstances and what those cases we're talking about. Were they... If you can refresh my recollection, were they cases in which a person wanted to fire their retained counsel of their choosing, which they could normally do, except for the other problems that come in depending on the timing, and then have the court appoint counsel? They were cases... Rivera, Corona was a person who had retained counsel and wanted court appointed counsel. Back to my notes here. And I believe Brown was also court appointed to court appointed, actually. Or actually, retained court appointed. I think when you... If you wanna look at this as, what would a judge do if it were in counsel to retain counsel, which I think is what the Rivera, Corona, and Brown courts wanted the district courts to do, because they don't want people who need court appointed counsel to be in a worse position than those who need... Who can afford retained counsel, is... They said, first see if they qualify. But in any case, even if we were looking at retained to retained, and it was just a matter of, am I going to give this person enough time, a continuance, so that they can actually get a new lawyer up to speed? Am I going to honor their right? That case, the Ninth Circuit addressed that issue in Nguyen, and it said, the district court can look at its own calendar and weigh that against the defendant's interest in counsel choice, but it has to give weight, some weight in that balance to the defendant's interest. And here, our argument is that no weight was given to Mr. Toki's interest. It was acknowledged that he wanted to fire this lawyer. It was acknowledged that this lawyer was not up to speed in the case, but that didn't seem to carry any weight versus keeping that trial date, which... Was there anything in the record... I know Mr. Tobi said at that hearing that he'd had difficulty engaging with his attorney for some time. Is there anything that establishes at what point Mr. Tobi realized he needed different counsel, he wanted different counsel? Did he know this at some point, maybe weeks before trial, instead of two days before trial? There's nothing... I mean, that would have been between Mr. Tobi and his lawyer. I don't know when he first said it to his lawyer. We know that on the day of the pretrial conference, that was the first words... That was the first matter addressed. So as far as whether he earlier asked his lawyer to make this motion, we just don't know what day that happened or exactly when. Counsel, could you address the ripeness issue? Sure. Your Honor, I think that the district judge made a logic error in this case. And so the Sixth Amendment guarantees the right to counsel in all federal criminal prosecutions. And it's rooted... It's root meaning is the right to hire your own lawyer and choose your own lawyer. Now, it has developed in the 20th century to also include a component of the right to court appointed counsel in certain kinds of cases. We maintain that this was a case where Mr. Tobi had the right to court appointed counsel, but the district judge felt that he did not. But the error... Well, is there... Does it matter whether or not imprisonment was at issue? Well, Your Honor, I would argue under Alabama versus Shelton, that Mr. Tobi is in the same shoes. If he violates probation, he could get jail time. I also believe under federal rule of criminal procedure 58 and 44, there's a rule based right to counsel, unless the magistrate judge has said before the petty offense trial that jail is not a possibility here. So I believe Mr. Tobi did have that right. But even if he didn't, I believe the Sixth Amendment choice of counsel right exists regardless of the right to court appointed counsel. And we can see that in Supreme Court cases where defendants who are too wealthy to be entitled to court appointed counsel still have the right interest in counsel choice. So those are two components that can exist independently. I was just curious whether the right to counsel extends to all misdemeanor prosecutions in your view. No, I believe that if it's a petty offense or lower and the government and judge... Really, if the magistrate judge commits beforehand that there is no possibility of jail time, which happens all the time in our district, then there's not a right to court appointed counsel. But it has to be a decision announced beforehand. What case says that? Well... What case says that the court has to commit ahead of time that there is no jail time before the right to counsel evaporates? What case says that? There's a case called Downand from our district that says that. Also, if you look at Rule 58 of the criminal rules, it says, these rules apply, meaning the federal rules of criminal procedure apply to misdemeanor cases, unless it's a case where no jail time is a possibility. And then Rule 58, I think it's A3... Yes, A3 says, the definition of a petty offense for which no sentence of imprisonment will be imposed is a petty offense for which the court determines that in the event of conviction, no sentence of imprisonment will be imposed. So if the court makes that decision before trial in a petty offense, then there is no right to CJA counsel. Counsel, the Downey case that you referenced, or is that in your brief? It's not in my brief. I didn't address that because the magistrate judge never really decided that Mr. Toby didn't have a right to court appointed counsel. He decided he had no right to fire his counsel, so he didn't get there. So I didn't brief the issue of the right to counsel under the CJA federal rules of criminal procedure, but that is standard practice in our district. Any further questions from the bench at this time? Let's hear from the government and we'll give you a chance to respond. Ms. Bennett? Good afternoon, Alston Bennett on behalf of the United States, and may it please the court. This court should affirm Toby's conviction for two reasons. First, because the Sixth Amendment right to counsel claim was not right for review because he did not receive a sentence of actual imprisonment. And second, even if the claim is right for review, the magistrate court was within its discretion to deny Toby's eve of trial claim, or excuse me, eve of trial request to discharge his retained counsel for appointed counsel. Turning to the first issue, the ripeness issue, as this court in United States v. Brown explained, the right to counsel under the Sixth Amendment encompasses two distinct rights. The first, a right to adequate counsel, and second, a right to choose one's own counsel. If a person does not have a Sixth Amendment right, they don't have these two derivative rights either. As the Supreme Court has explained in a line of cases starting with Arjun Singer, down to Scott v. Illinois, as well as Alabama v. Shelton, the Sixth Amendment right to counsel is limited to those cases in which imprisonment is actually imposed, and that requires courts to do a retrospective review. We can't be certain whether or not a person has a Sixth Amendment right to counsel in these misdemeanor cases until after the fact, because we must know what kind of sentence that they receive. And mere authorization of imprisonment or the threat of imprisonment is not enough. And that's because, as Arjun Singer Court explains, the penalty of imprisonment is different in kind from fines or the mere threat of imprisonment. And here, Mr. Tobey received a $500 fine and 24 months of unsupervised court probation. In the end, he was not sentenced to actual imprisonment. And contrary to Ms. Wiggins' argument that there is case law that requires the magistrate judge to make that finding before the trial even begins, there is no binding Ninth Circuit precedent that requires that. Now, following along this argument, does that mean that because he wanted counsel, was not given counsel, and let's assume that if he had had a right to, let's assume that he had a right to Sixth Amendment counsel if the punishment were X, does that mean that because he didn't get counsel, because he wanted counsel, that in fact he cannot, in the future, in this case, be subject to imprisonment? That's correct, Your Honor. If a person's Sixth Amendment right to counsel was violated, and the court finds that later when thinking about whether or not to revoke probation and impose a sentence of imprisonment, that is taken off the table. And that's a risk that the government takes by not committing to a decision of whether or not to seek imprisonment before trial begins. It's a Mr. Tobey's free to violate probation without fear of going to jail? That is correct, Your Honor, as the Supreme Court has held in the Ninth Circuit in the United States. You gave me the answer, okay. So he's not going to jail no matter what he might do in terms of violating his probation. That's your view? That is correct, and the Ninth Circuit has actually held that in United States v. Foster and United States v. Moran out of the Ninth Circuit, which is an unpublished decision, but it is consistent with the court's opinion in Foster. Turning to the second issue, the magistrate judge was within his discretion to deny Tobey's eve of trial request to discharge his retained counsel for appointed counsel. A defendant does have a right to counsel of his choice, but this choice is not absolute. It is subjected to whether or not this decision to discharge his counsel would interfere with the fair, efficient, and orderly administration of justice, and the Ninth Circuit has consistently held that trial courts have broad discretion to deny eve of trial requests for continuance, and that's exactly what happened here. Two days before trial, despite being represented for over six months by this attorney, Mr. Tobey appears and he requests a change of counsel. Now, importantly, he does not say that he feels that Mr. Stroud, his retained counsel, is unprepared. Mr. Tobey's complaints centered around the frequency of that communication with his retained counsel, and he did explain. I know, Judge Beatty, you mentioned, you know, at what point did Mr. Tobey realize that he wanted new He actually says on the record that it was only after he got the motion to dismiss and the government's response to that, that he decided that this potentially might be above his retained counsel's abilities to proceed, but despite that, he didn't bring his concerns to the courts until those two days before trial. I think the sympathetic with Mr. Tobey in this circumstance, this is a low-profile, low-dollar case. It does not appear to be a particularly sophisticated litigant, and for him, with this amount of money or a possibility of imprisonment at stake, for him to behave like a sophisticated, well-heeled person, go find new counsel, have the new counsel make a motion to do that, that's expecting a lot. Potentially, Your Honor, yes, and it is worth noting that he did raise this motion two days before trial, and when it was denied, two days later, he did appear with Mr. Stroud. At that point, Mr. Tobey did not... Well, given what the magistrate judge ruled. I mean, if I were Mr. Tobey's situation, I think I'd probably do exactly the same thing. I'd have it, but I'd do it, sure. Yes, Your Honor, but he doesn't raise the issue again. He doesn't claim the day of trial that Mr. Stroud is unprepared to proceed, and actually, Mr. Stroud himself does appear, and he does not claim to be unprepared for trial. In fact, he makes several statements on the record regarding his level of preparation, stating that he was prepared to proceed. In making arguments regarding the CFR in question, Mr. Stroud stated, I have prepared for what the criminal complaint stated on the record, and that's in the subliminal excerpts of record at page 8, lines 6 to 9. And later, when he's... Excuse me, is there a prejudice analysis? I mean, if we're considering whether the magistrate judge abused his discretion in not allowing Mr. Tobey to fire his retained counsel, and then either retain counsel or have appointed counsel, is there a prong that requires us to consider prejudice? I mean, at the point this occurred, the magistrate judge was making a decision without knowing what Mr. Stroud was going to do or how he would perform. Your Honor, the magistrate court could look at several factors, one being delay, another being the court's calendar, the third, prejudice, inconvenience to the parties, all of which were present here. Mr. Tobey had not retained counsel before this hearing, so that would have meant that he was requesting his appointed counsel at that meeting. So, I'm sorry to interrupt again. What I... I understand what you're listing of the factors, and I would assume that at the time the magistrate judge is making this decision, whether to allow him to fire his counsel a couple days before trial and considering prejudice, considering what prejudice the defendant might face if he has to stay with an attorney he doesn't want, et cetera, et cetera. But I don't know that there's anything in the case law that suggests sort of a no-harm, no-foul analysis that after the fact, we'd say, well, as it turns out, the lawyer showed up and did an okay job. So, that means the magistrate judge's decision was not an abuse of analyzing what you were saying. But it seems when you were running down this list of citations about what the attorney actually did at the trial, that it seemed like a sort of a, well, in hindsight, it turned out, okay, he got decent representation, so that means he wasn't prejudiced or that the magistrate judge didn't use his discretion. There is no case law that says, you know, in hindsight, no harm, no foul. But I think the record in front of the magistrate judge at that time, Mr. Tobey's complaints were about the and with the motion to dismiss that the magistrate court had in front of him, that included extensive factual representations. There was no evidence in front of him that Mr. Stroud himself was unprepared and would be unprepared in two days. After all, he had been representing Mr. Tobey for over six months. The trial had been set for two months. And Ms. Ludwig, the attorney from Mr. Stroud's firm that did appear on Mr. Tobey's behalf, had actually appeared twice before this magistrate judge. At no point did Mr. Tobey issue a complaint about not being in communication with Mr. Stroud at that time. Ms. Ludwig was involved in the motion to dismiss as well. She was the undersigned on that. And she was actually present at the trial as well. So there is a continuity of counsel there. And while Ms. Ludwig can speak to her own preparation about the case, she cannot speak to Mr. Stroud or her colleague's preparation for the trial two days later. I see that my time is running short. I'd be happy to answer any further questions from the courts. Okay. That sounds as though no questions. Thank you very much. Thank you. Ms. Wiegand, let's put two minutes on the clock. Thank you. Your Honors, I'll try to keep it brief. I just want to say, first, I hear that the government has just committed that Mr. Tobey won't go to jail. That is a new commitment. The district court didn't think that was true. But I want to be sure the court understands that that doesn't mean Mr. Tobey has no interest in getting this conviction reversed. He has no record. He's a military veteran. He's deeply shamed by this conviction, and he feels it's wrong. He wanted to go with a lawyer who was prepared and who had the skills to let him tell his version of events. And that clearly didn't happen. The attorney had no idea how to put him on the stand. And so the fact that he won't go to jail doesn't solve the problems in this case. Turning to an issue, Judge Wiegand. I mean, I understand, of course, what you're saying is true. In a practical sense, it doesn't expunge the conviction or reimburse him for the fine, assuming he's paid $500. But, I mean, as a constitutional matter, if he faces no jail time, if it can't happen, what does that mean under the Sixth Amendment and whether he has a right? Because then it would seem that maybe the district court would write on this rightness issue, that there was—he didn't have a right to counsel for the court to be delving into. And if the government came back and said, we want to have a revocation hearing, we think he violated his unsupervised probation, which would be fairly difficult for them to detect, the court—you would then file a motion with the cases that the government cited saying, you can't send him to jail. You know, that's not an option. So what are you going to do if you can prove a violation and have a revocation? So, I mean, it doesn't seem to—what you're saying about what his concerns are, which are completely understandable, doesn't seem to really have an impact on the Sixth Amendment analysis, unless I'm just not understanding your argument. Well, my argument would be that it still does, because he was not allowed to—he was forced to go to trial with an attorney he didn't want. So his Sixth Amendment—and I understand that there is a balancing that happens when a person close to trial tries to exercise their right to choice of counsel, and the court could give some weight to inconvenience to the government. But what do you say to the government's argument that that right to counsel of choice—if he didn't have a right to counsel at all at that point, then he didn't have what they characterize as a derivative right to counsel of choice. What's your argument there? I think he still had a right to counsel. Even if a wealthy defendant was facing a misdemeanor and the government said ahead of time, we're not going to seek jail time in this case, that individual still has a right to hire a lawyer and so I don't think the government, by not asking for jail time, can force someone to not have counsel. They still have, under the Sixth Amendment, which applies to all federal criminal prosecutions, they can still bring in their own lawyer. And so I don't think that the right to retain counsel and choice of counsel is derivative of the right to court-appointed counsel. Assuming you're correct and your argument seems to have some basis and reason, I see some traction there, does that mean that their right to fire their lawyer is in some way diminished? I mean, when the district court or the magistrate judge is weighing these issues, the fact that they don't really have a right to counsel, but of course they can hire counsel if they want at their own expense, but now they want to fire this person that they chose, and they're responsible for this attorney's actions, they chose them, right before trial, does that weigh into the balancing of whether the continuance should be, what's essentially continuance, whether that should be granted? So I guess the question is, would the fact that they no longer have a right to court-appointed counsel weigh into whether the court should honor their right to fire an attorney they don't want? I would say no, not at all, but I do understand that the court is going to look at the fact that, okay, if I allow them to fire their lawyer, they're going to need some time to get a new lawyer up to speed, and I do understand that is part of the weighing, but I think the court, in the Nguyen case, N-G-U-Y-E-N, that is in my brief, talks about that situation and says, yes, it's balancing, but some weight and consideration must be given to the Sixth Amendment interest in someone being able to choose their own lawyer and fire a lawyer they don't want, and here I just don't think that weight and consideration was given. The magistrate judge couldn't have been more clear that he agreed with Mr. Tobey, your counsel is unprepared and is not here, but we have trial in two days, that's an exact quote, it was as though there's nothing I weigh to his Sixth Amendment interest in not being forced into trial with an attorney he didn't want. Okay, I've gone over my time, but I'm happy to answer anything else. Okay, any further questions on the bench? No, thank you. Thank you very much, thank both of you. The case of Tobey v. United States now submitted, or United States v. Tobey now submitted for decision, the next case is Bailey v. McFarland.
judges: W. Fletcher, Rawlinson, Bade